## MARY K. HAMMOND et al.

*v.*

## ELIZABETH CRONKRIGHT, executrix &c. of William Berry, deceased.

1. A testator by his will directed his executrix to make certain improvements upon his burial plot, and then authorized her to "let, sell and convey" his real estate, or any part of it, and during the lifetime of his wife to use so much of the proceeds of such sales as might be necessary for the support of his wife and her burial, and further directed his executrix during the lifetime of his wife, out of the proceeds of such sales, to pay all taxes and necessary expenses. He then gave, devised and bequeathed all the rest, residue and remainder of his estate, real and personal, to his daughter, who was his executrix, and to three infant children of a deceased son, to hold to them and their heirs—one-half to the daughter and one-half to the three grandchildren.—*Held*, that the power of sale was confined to the purposes of the will, other than a division between the daughter and grandchildren.

2. The executrix having sold land enough to answer the purposes in question, and, instead of applying the proceeds to those purposes, having made cash advances to the guardian of the three infant children—*Held*, that such advances should not enter into her account as executrix.

3. The three grandchildren having attained their majority, and having joined in a bill against the daughter for partition of the lands so devised and remaining unsold, and the daughter having filed an answer and cross-bill, setting out her account as executrix, and praying its settlement and allowance by this court—*Held*, that she was entitled, under the circumstances, to a lien upon the grandchildren's share of the land for the advances so made.

4. The three infant children and their mother having had the exclusive occupation and enjoyment for a period of five years after testator's death of a farm of which he died seized—*Held*, that they must account to the daughter for one-half of the fair rental value of it for the term they so occupied.

5. The widow of the testator lived with the executrix, who was her daughter, as a member of her family, from the death of testator to the death of the widow, a period of four and a half years. The executrix prayed allowance in her account for a round sum for each year for board, including nursing, clothing and spending-money furnished the widow; no items of clothing or spending-money were furnished or any voucher for them.—*Held*, that the executrix could be allowed only such a sum as would make her whole, without any allowance for profit or for her own services, and as no items were produced of spending-money or clothing furnished, or any proof of the amount so furnished, nothing can be allowed on that score.

Bill for partition. Heard on bill, answer, cross-bill and proofs.

*Mr. Charles L. Corbin* and *Mr. Edward J. Luce*, for the complainants.

*Mr. Charles H. Voorhis*, for the defendant.

PITNEY, V. C.

The complainants are the three children of Stephen Berry, deceased, and the grandchildren of William Berry, the defendant's testator, and they are entitled under his will to the one-half of his estate, the defendant being entitled to the other one-half.

The testator died March 3d, 1878, seized and possessed of considerable real estate, but of very little personal property. He was in debt less than $200, over and above his physician's bill and funeral expenses.

His will was as follows :

"*First.* I direct that my executor, hereinafter named, shall, out of my estate, enclose my burial plot and provide suitable headstones or monuments for my sons John and Stephen, my grandson William, and myself and wife.

"*Second.* I authorize and empower my executor to let, sell and convey my real estate, or any part thereof, and during the lifetime of my wife Margaret to use so much of my estate and of the proceeds of such sales as may be necessary for the comfortable support and maintenance of my said wife during her life and for her proper burial after her decease. I make these provisions in lieu of dower.

"*Third.* All the rest, residue and remainder of my estate, real or personal, I give, devise and bequeath to my daughter, Elizabeth Cronkright, and my grandchildren, Mary Keziah, Margaret and Anna, children of my son Stephen, to be divided into two equal parts, one to go to my daughter, Elizabeth Cronkright, and the other to my said three grandchildren, to hold to them and their heirs.

"*Fourth.* My executor shall, during the lifetime of my wife, out of my estate or the proceeds of sales thereof, pay all taxes and necessary repairs and insurance.

"*Fifth.* I hereby nominate and appoint my daughter, Elizabeth Cronkright, executor of this my last will and testament."

The real estate of the testator consisted of, first, a farm of about forty-eight acres, situate between Rutherford and Kings-

land, Union township, Bergen county; second, parts of a farm situate at Carlstadt, in Lodi township, a mile or two north of Rutherford, which the testator had laid out into building lots, and from which he' had made considerable sales; and third, a piece of salt marsh near Carlstadt.

The Rutherford farm had been purchased for, and had been occupied by, Stephen Berry, the son of the testator, and the father of the complainants, in his lifetime, and was, at the testator's death, occupied by his (Stephen's) widow and her children, the complainants here, all infants, the eldest having been born in 1864.

No sales of land were made by the defendant under the power given her by the will until 1885. Between August of that year and 1887 she made several sales of parcels of the Carlstadt land, amounting, in the aggregate, to $5,370.

The widow of the testator died September 23d, 1882.

The defendant took no steps toward procuring a judicial investigation and settlement of her dealings with the estate until at or shortly before the filing of the bill herein. Some time previous thereto defendant had exhibited her account to the complainants, and the same had been examined by them and their solicitor, and serious differences had arisen between the parties as to it, and specific objections to it had been made by the complainants. The defendant showed by her account a large balance, nearly $3,000, due to her, and claimed the right to exercise the power of sale contained in the will to raise money to reimburse herself, and also to execute that part of the will which directed testator's burial plot to be enclosed and monuments erected over the remains of himself, wife and children, which she alleged would cost $1,200.

Complainants contended that nothing was due defendant, but that she was indebted to the estate, and that her estimate of the cost of the works in and about the burial plot was extravagant, and they expressed a desire to have their share of the estate in land, and proposed a division and protested against any sale. To this defendant did not assent. Negotiations for an amicable settlement seem to have ended in October, 1889, and in November,

1889, without awaiting the result of a judicial settlement, the defendant took measures to make sale of all the real estate of the testator, and, for that purpose, had the Rutherford farm surveyed and in part divided into building plots, and employed an auctioneer to advertise and sell all the land at auction on December 2d, 1889.

The complainants filed their bill November 26th, setting out most of the facts above stated, claiming that the power of sale contained in the will had expired, and that the defendant was not in advance to the estate, and had money enough in her hands to complete the execution of the will, praying for a partition and an injunction against the proposed sale.

Upon filing the bill an order to show cause was made with an interim restraining order, upon return of which it was agreed that the order should stand until the hearing of the cause.

The defendant answered, and incorporated in her answer a cross-bill, by which she submits to the court her account, showing her dealings with the estate; withdraws the same from the consideration of the Bergen orphans court for settlement, in which she had previously given notice, and prays that the same may be examined and passed upon by this court, and the amount due her ascertained, her power of sale under the will established, and she permitted to sell the lands to reimburse herself and to complete the execution of the will.

Complainants have answered the cross-bill, and by their answer have taken exceptions to several items of defendant's account. I will consider these separately.

*First.* The defendant claims credit for the following item: "1878. March 20—Nursing, attendance and board &c., $112.53." This is supported by a voucher in these words, and, except the signature, in the handwriting of the defendant's counsel:

"RIDGEFIELD, N. J., March 20, 1878.

*"Estate of William Berry, dec'd, to Elizabeth Cronkright, Dr.*

"To nursing and attendance during testator's last illness and services and expenses as attorney under written power, to testator's death, $112.53.

"Received payment,
"ELIZABETH CRONKRIGHT."

· No items are furnished, no book entries or other written evidence is produced in its support, except the evidence of the defendant herself. She was examined in its support, subject to objection on the statute as construed in *Smith* v. *Burnett, 8 Stew. Eq. 314,* and swore that she boarded and nursed her father and mother for four weeks before his death, and had, during that time, kept two men to nurse him day and night, and that she had charged only for actual disbursements. This comprises all the evidence in support of this item, it being admitted, however, that the testator in his lifetime did live with the defendant as a member of the family.

The circumstances are as follows: In 1872 the testator and his wife went to live with the defendant, who was a widow, with a fortune of her own, derived from her husband. At that time her father was largely in debt to her for moneys advanced to aid him in promoting his project for the sale of his Carlstadt homestead in building lots and for the purchase of the Rutherford farm for his son Stephen to live upon. On several occasions between that date and his death he conveyed to defendant parcels of the Carlstadt tract in payment on account of his indebtedness to her. On the 5th of February, 1878, less than four weeks before he died, he made such a conveyance, which, as she swears, paid her all he owed her for money lent and interest and on account of board of himself and wife to that date. On the 18th of February, thirteen days later, and thirteen days before he died, he made his will, and on that day made further conveyances of Carlstadt lots to defendant, a part of which, on the same day, she, at his request, conveyed to her mother. The lots retained by her out of the conveyance of February 18th I understand to be of small value. I infer, however, from the circumstances, that the testator felt at the time that he had but a short time to live, and it is not improbable that the last conveyance to his daughter was intended as compensation for whatever further trouble and expense he might be to her.

Considering all the circumstances, and the absence of any statement of items, I feel constrained to disallow this item. I think

it would be bad policy to countenance the allowance of a charge of this kind supported as this is.

*Second.* The defendant claims an allowance for $2,424 for the " board &c." of her mother from March 3d, 1878, the date of the death of the testator, to September 23d, 1882, the date of the death of the widow, a period of two hundred and thirty-seven weeks, and also $100 for nursing her in her last illness. She swears that this includes clothing and pocket-money furnished the deceased and the expenses of an attendant for four years. Here, again, no items are furnished, no statement is given of the amount of money paid either to her mother for her clothing, or for an assistant, or for a nurse in her last illness. No account appears to have been kept of any of these matters, or at least none is produced. The charges in the account are made each year—" board &c. of widow under the will "—$550, $540, $535, $540, $760.

Defendant seems to have made a contract with herself to take care of her mother and furnish her board, clothing and spending-money and attendance for about $10.50 a week. Now, while it might be, and probably was, competent for her to make such a contract with a third party, I think it was, for obvious reasons, not competent for her to make it with herself. The impropriety of such a transaction is manifest. No doubt she was justified in feeling that the only proper home for her mother was with her; but she should have kept an account of all moneys paid to or for her, and she can be allowed in her account only upon that basis and the basis of the actual cost to her of the board &c. furnished her mother. She can be allowed nothing for profits or for her own services.

The complainants contend that the charge actually made is much too high. The evidence shows that her mother lived in her family as a member thereof, and not as a boarder. The only attendance provided for her was that of the complainant Mrs. Hammond, who lived with the defendant most of the four and a half years, and assisted in the house-work and in the care of her grandmother. She went to school part of the time, and was furnished by the defendant with schooling and board and clothes,

but, with the exception to be presently stated, with no money. She swears that the defendant took her to bring up, out of kindness to her mother, who was unable to support so many children. I recollect no evidence that any additional attendance was procured in the last illness. It does not appear that the defendant was in the way of keeping boarders, or would have made any profitable use of the room occupied by her mother if she had not occupied it. It does appear that her mother had at least $50 in cash at the time of her husband's death, and was furnished with a mourning outfit at that time, to the extent of $50, at the expense of the estate.

Under these circumstances, and in the absence of any proof of the amount of money paid to or on account of the mother, I think the charge made for her board and support is too high, and, taking all the evidence into consideration, I am satisfied that $6 a week is ample to make the defendant whole, and that, in my judgment, is all she is entitled to. She is not entitled to anything for her own services in her mother's care.

The charge of $100 for nursing is made up of $50 paid to the complainant Mary Hammond and $50 allowed to the defendant. The amount paid to the complainant Hammond may stand, but the $50 allowed to the defendant must be disallowed.

The charge of $100 for nursing her mother will be reduced to $50.

*Third.* The defendant claims credit for the annual taxes paid on both the Rutherford and the Carlstadt properties, the former being in Union township and the latter in Lodi.

Two objections are made to these payments:

1. That in several instances she permitted the taxes to fall in arrears, and so paid costs and extra interest on them, amounting, in the aggregate, to over $100; and

2. That she permitted the Carlstadt taxes to be assessed upon the whole tract as one, including in one assessment the part belonging to the estate and the part owned by herself under conveyances from her father.

To these objections defendant answers, as to the first, that she paid the taxes as soon as she could; that she really did not have

the money to pay promptly. And, as to the second, that the Carlstadt property was assessed as a farm and not as building lots, and that if she had procured a separate assessment to be made upon the separate interests she would probably have increased the assessment, and that she rented out the whole for cultivation and charged herself with the rents of the whole, and that the rents about equaled the taxes.

Obviously, the only correct mode of disentangling these items is to ascertain the comparative assessable value of the two several portions of this Carlstadt farm, viz., that owned by the defendant individually and that of which the testator died seized, and apportion the taxes between them, and then to make a like ascertainment of the amount each part contributed towards the rents received, and apportion them.

It is equally manifest that this will prove a tedious, difficult and expensive task, and is to be avoided if practicable to do substantial justice without it.

I find the total payments of taxes for the land in question to be $1,226.41, and the rents derived therefrom $1,124.50. The evidence tends to prove that the defendant's part of the tract produced more than that owned in common with her nieces. Complainants claim that the taxable value of defendant's lots is greater than that of those held in common. I am not satisfied that there is so great a difference in value as to warrant the expense of a reference to a master to establish it. I think these items of taxes on the Lodi property must stand.

The payments of interest and costs on the taxes in Union township—the former at twelve per cent.—amount to $86.41, and those in Lodi to $20.51. The payments, in several instances, were in arrear for several months, and the difference in the amount of interest paid in the two townships is due to the failure to charge interest in Lodi.

Upon looking into the defendant's account, I find her at all times in advance to the estate on account of actual cash transactions up to April 1st, 1884, and on that date to an amount between $1,100 and $1,200, but, owing to sales of real estate in the summers of 1884, 1885 and 1886, the balance was against

her in April, 1886, to the extent of $750 or thereabouts, and continued to increase for two years, so that on April 1st, 1888, defendant was in debt to the estate on account of actual cash transactions (and not of course including interest on her advances, or her charges for supporting her mother) about $1,600.

Upon looking at the tax vouchers, I find that much the greater portion of the payments of interest and costs on account of taxes were made while defendant was in advance to the estate. I think that, upon the evidence, she cannot be charged with the failure to realize by sales sooner than she did, and, under these circumstances, and considering that it was the duty of the complainants, as tenants in common, to pay their share of the taxes, I think the defendant should not be charged with these excessive payments.

*Fourth.* Another question arises out of the occupation by the mother of complainants, while they were infants and two of them living with her, of the Rutherford farm. The evidence proves that this farm was purchased by the testator for a home for the complainants' father, and that he occupied it until he died, in 1872, after which his widow, the mother of the complainants, continued to occupy it with her family of infant children until testator's death, and all free of rent. Shortly after testator's death the complainants' mother took out letters of guardianship upon each of the children, and either then, or three years later, made an arrangement with the defendant by which she was to continue to keep the farm at the rate of $300 a year, and under it did continue to occupy it and take the rents and profits for five years up to April, 1883, when she gave up the possession. Mrs. Berry, the guardian, denies that this arrangement was made at the time the defendant swears it was, viz., April 1st, 1878, and says that no arrangement was made until the spring of 1881, when she was sent for to the defendant's house and was told by her and her counsel, then present, that she must agree as guardian to pay rent for the farm from the death of the testator, and that $300 a year was fixed as such rent, and that a year afterwards, about April 1st, 1882, she was sent for again to come to defendant's house, and there met defendant and her counsel, and then

signed four separate receipts on a single sheet of paper for $300 each, dated respectively April 1st, 1879, April 1st, 1880, April 1st, 1881, and April 1st, 1882, prepared by the defendant's counsel, and in the following language:

"Received April 1, 1879, of Elizabeth Cronkright, executor of William Berry, deceased, three hundred dollars, for Mary Keziah Berry, Margaretta Berry and Anna Berry.

"$300.                                   (Signed) ELLEN ANN BERRY,
                                              "*Guardian of said minors.*"

She signed a similar receipt for $300 on the 18th of April, 1883.

The vouchers produced by the defendant supports this evidence of the complainants. It does not appear that any receipt was given by the defendant to the guardian for the rent for these five years, but the understanding was, that the defendant should charge herself with the rent and credit herself with so much paid to the guardian. This she has done, and the complainants except to these items, both as to the charge and discharge of them, and contend that they should not be considered in that connection. The argument of the complainants' counsel is, that this is an attempt, on the part of the defendant, to charge the complainants' estate with a debt, by means of a contract made with their guardian, and that such a charge cannot be so made. I have not found it necessary to determine the questions of fact and law thus involved, since I have come to the conclusion that the items in question must be stricken out of the account for the simple and short reason that they are not true, and do not represent any actual transaction. No money was paid by the guardian to the defendant, and none was at any time expected or intended to be paid, and no money was in that transaction advanced by the defendant as executrix to the guardian for her minor wards. She had at the date of these receipts no money in her hands as executrix out of which to make such advances. If she had in fact made them in cash, it would have been out of her individual funds, and could not enter into this account.

In coming to this conclusion I have not overlooked the language of the will authorizing the defendant to "let" &c. the de-

vised lands, and shall have occasion further on to consider the power thus given.

But this conclusion does not, as it seems to me, relieve the complainants from liability to account for the use of the farm, of which they and their mother were in possession. At the death of the testator the complainants and defendant became seized as heirs at law and as devisees under his will, as I construe it, of the farm in question as tenants in common. The complainants and their mother, as their guardian, occupied it exclusively and took and received the rents and profits of it to such an extent, and under such circumstances, as to render them liable to account, under the rule established in this state in *Izard* v. *Bodine, 3 Stock. 403,* and *Davidson* v. *Thompson, 7 C. E. Gr. 83.* I feel justified in treating the possession of the mother with her children as the possession of the children. It was the only mode in which it was practical for them to have possession. They received the entire benefit of it. They needed a house and home, and food to eat, and a mother's care, and the farm with their mother's labor provided all. I think the amount fixed, $300 a year, a fair rent. The complainants come into this court asking equity, and they must do equity. And, as a condition to an actual partition which they ask, must account for and pay to the defendant the one-half of the rent at the rate aforesaid for the five years they occupied it. It may be that as between the three complainants the two younger must account for more of this rent than the older, who was most of the time living with their aunt, but that does not affect the defendant's rights in this suit, since the complainants join in their bill and prayer for a partition. Although the defendant in her cross-bill does not ask for a lien upon the complainants' share for this rent in precisely the form which I have considered it, she does, in substance, ask for it.

*Fifth.* Complainants except to the allowance of a charge made by defendant for interest paid for several years on a note held by Mrs. Green against the testator for $175. They contend that she should have paid off this debt.

For the same reason that I allow the interest and costs paid on the tax bills, I shall allow this item. Defendant made sales as

soon as she could to advantage, and when she did sell and realize enough to pay off the note and make the improvements on the burial plot, the necessities of the complainants were such that they were obliged to take from her a large part of the proceeds of such sales.

*Sixth.* Complainants claim that defendant has not satisfactorily accounted for the inventory. Their objections were reduced, at the hearing, to two, viz., $50 for clothing, which the defendant said she gave to her mother, and $150 for the Finklenagen mortgage, which she says she found was not worth foreclosing. I accept her view of this part of the case, and decline to further charge her on account of it.

*Seventh.* The defendant made certain payments in cash to the guardian of complainants, and also to two of the complainants in person, amounting, in the aggregate, as entered on defendant's account, to $1,373.50. Against these charges complainants make two objections :

1. As to a charge of $106, September 1st, 1884 ; that though a voucher for $106, signed by the guardian, is produced, still the charge is a mistake, and the sum represented is included in a previous receipt. Most of the receipts for these moneys were not signed at the time the money was advanced, and that mode of doing business was liable to lead to actual mistakes, and to a belief that mistakes existed when none did exist. The guardian honestly believes the sum covered by this receipt is included in another, and so swears. But a careful examination of the evidence fails to convince me that she is correct in her belief, and so I conclude to allow the item to stand.

2. Complainants contend that these items have no place in this account, and should be brought in against the complainants as advances by one tenant in common to the other. The determination of this question involves, in a measure, the construction of the will, and the determination of the extent of the power of sale given by it. Upon a consideration of the contents as a whole, I am satisfied that it was not the intention of the testator that his executrix should sell for the purpose of division among the beneficiaries named, and that the power was to be exercised for the

purpose, and that only, of the payment of his debts, funeral and testamentary expenses, current taxes, and the support of his wife and the improvement of the burial plot. The amount of sales actually made was probably sufficient, and possibly a little more than sufficient, to answer all these purposes, so that if the defendant had not paid any cash to or for the complainants she would have had sufficient funds to complete the execution of the will. Payments to the complainants and their guardian ought not, in strictness, to have been made, but they were made in good faith, and no doubt at the earnest request of the guardian and the complainants, and I think they should not now be permitted to take or derive any benefit from so technical an error. At the same time I think it is better that these items should be excluded from the account, and treated as individual advances by the defendant to the complainants, for which she is entitled to a lien upon their undivided share of the lands devised.

*Eighth.* Another topic discussed was that of interest. The defendant is entitled to interest on the yearly balance, made up on the 1st of April, in her favor, on account of actual cash transactions until the balance turns against her. I exclude from these balances a credit for the support of her mother, because that never assumed such a shape as to entitle her to interest upon it, and because I have taken the loss of interest on it into consideration in fixing the amount allowed to her. After the balance of actual cash transactions, exclusive, of course, of advances to the complainants, has turned in the defendant's favor, she will be entitled to apply that towards paying the charge for keeping her mother, until the balance, including that charge, is against her; and, after that, she must pay interest on balances. The amount of interest on each yearly balance will not be added to the principal, but will be credited and charged at the foot of the account. She will be entitled to commissions upon the amount of the actual cash receipts. It is probable that this mode of stating the account will show a balance in the defendant's hands. If so, she will be entitled to retain the one-half going to the complainants against what they owe her. The defendant will be entitled, in her individual capacity, to a decree against the complainants for $750,

without interest, for the one-half of the rent of the Rutherford farm for five years, from 1878 to 1883, and to a like decree for the whole amount of the actual cash advances made to and for them, with interest from the time of payment, and for this amount also she is entitled to a lien on the complainants' individual interest in the land.

*Ninth.* The view I have taken of the amount defendant is entitled to for the support of her mother, of the construction of the will, and the proper mode of stating the account, shows the propriety of the interference of this court to stop the contemplated sale. The defendant ought not to have proceeded to sell until her accounts were settled, and then only to raise enough money to execute the will. She was not justified in the course she adopted, and I cannot allow her anything on account of the expense of it. But she was quite right in bringing her account into this court, where only it could be properly settled, and she has thereby saved the estate much expense. I think the costs of both parties should be paid out of the proceeds of the sale of such portion of the estate as shall be sold for the purposes now to be stated.

*Tenth.* As to the enclosure of the burial plot and the erection of the headstones, I think the defendant's estimate of the cost is probably too high. Each party may procure and submit plans and specifications and estimates of the cost of doing this work, and I will determine how it shall be done after seeing them and further hearing the parties and witnesses if necessary.

*Eleventh.* The complainants are entitled to a decree for partition, but it must be so carried out as to preserve defendant's lien for the amount due her, and to ensure the burial plot improvements. I am satisfied, from the evidence, that the part of the Rutherford farm east of the meadow road and that part of it west of that road, shown on the map as containing six acres and forty-five hundredths, and including the buildings, cannot be divided to advantage, and therefore should be sold at once, and I understand all parties agree to that. I will therefore advise a decree directing it to be sold by a master. This will enable all parties to bid and purchase.

The decree may be made at once and in advance of the settlement of defendant's account and the fixing of the cost of the burial plot improvement.